# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | John W. Darrah | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 01 C 1697 | **DATE** | 10/2/2002 |
| **CASE TITLE** | SCHNADIG CORPORATION vs. COLLEZIONE EUROPA U.S.A. | | |

**MOTION:**

[In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____ .

(3) ☐ Answer brief to motion due_____ . Reply to answer brief due_____ .

(4) ☐ Ruling/Hearing on _____ set for _____ at _____ .

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____ .

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____ .

(7) ☐ Trial[set for/re-set for] on _____ at _____ .

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____ .

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
    ☐ FRCP4(m) ☐ Local Rule 41.1 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] Status hearing held. Unopposed motion to reschedule the pretrial conference [61-1] is granted. Pretrial conference set for 11/13/02 is stricken and reset to 11/26/02 at 11:00 a.m. Enter Memorandum Opinion And Order. Defendant's motion for summary judgment of unenforceability is denied. Defendant's motion for summary judgment of noninfringement is granted in part and denied in part. Defendant's motion for summary judgment of noninfringement of the '811 patent is granted. Defendant's motion for summary judgment of noninfringement of the '839 patent is granted as to the 01 table and denied as to the 01X table.

(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | number of notices | | Document Number |
|---|---|---|---|---|---|
| | No notices required. | | | | |
| | Notices mailed by judge's staff. | | OCT 04 2002 | | 69 |
| | Notified counsel by telephone. | | date docketed | | |
| ✓ | Docketing to mail notices. | | 6-Y- | | |
| | Mail AO 450 form. | | docketing deputy initials | | |
| | Copy to judge/magistrate judge. | | | | |
| LG | courtroom deputy's initials | | date mailed notice | | |
| | | Date/time received in central Clerk's Office | mailing deputy initials | | |

SCHNADIG CORPORATION,               )
                                    )
            Plaintiff,              )   **DOCKETED**      )   No. 01 C 1697
                                    )
      v.                            )   OCT 0 4 2002      )   Judge John W. Darrah
                                    )
COLLEZIONE EUROPA U.S.A.,           )
                                    )
            Defendant.              )

## MEMORANDUM OPINION AND ORDER

Plaintiff, Schnadig Corporation ("Schnadig"), filed a complaint against Defendant,

Collezione Europa ("Collezione"), alleging patent infringement of United States Design Patent Nos.

422,811 ("'811 Patent") and 424,839 ("'839 Patent"). Before the Court are two motions: (1)

Defendant's Motion for Summary Judgment of Unenforceability and (2) Defendant's Motion for

Summary Judgment of Non-Infringement.

## BACKGROUND

The '811 Patent was filed on June 7, 1999, issued on April 18, 2000, and lists Timothy

O'Hare ("O'Hare") as the only inventor and Plaintiff as the assignee. (Def.'s 56.1(a)(3) Statement

A8)[1]. The table design of the '811 Patent is part of Plaintiff's Regency line of furniture. (Id., at ¶

A9). The '811 Patent contains 1 claim and 3 drawing sheets. The claim is for "[t]he ornamental

design for a table, as shown and described." The drawing sheets are attached as Figures 1-3.

---

[1]Statements of fact from Defendant's Statement of Material Facts Under Local Rule 56.1
in Support of Defendant's Motion for Summary Judgment of Unenforceability are designated by
the prefix "A"; statements of fact from Defendant's Statement of Material Facts Under Local
Rule 56.1 in Support of Defendant's Motion for Summary Judgment of Non-Infringement are
designated by the prefix "B".

69

Plaintiff is accusing Defendant's T5450 table of infringing the '811 Patent. (Def.'s 56.1(a)(3) Statement ¶ B7). The long sides of the T5450 table curve outwardly in the middle. (Id., at ¶ B8). The legs of the T5450 table have an upper scroll portion, a semicircular middle portion and a tapered bottom portion. The width of the upper scroll portion is the same as the width of the semicircular portion. (Id., at ¶ B9) The T5450 table also contains an ornament under the top of the table. (Id., at ¶ B21).

The use of a decorative ornament motif beneath the table is not new in the furniture field. (Def.'s 56.1(a)(3) Statement ¶ B10). Certain prior art tables have included some kind of object which was connected to bars which extended horizontally from table legs under the top portion of the table. (Id., at ¶ B11). Other ornaments underneath the table are shown in United States Design Patents Nos. 37,341; 78,510; 78,457; 214,672; 246,881; 351,077; 402,487; and 404,596. (Id., at ¶ B12). The ornament under the T5450 table is positioned lower than the ornament under the table of the '811 Patent. (Id., at ¶ B21).

During the prosecution of the '811 Patent, Plaintiff submitted two Information Disclosure Statements dated September 30, 1999 and October 22, 1999, disclosing an undated photograph of a table design ("the undated table"). (Def.'s 56.1(a)(3) Statement ¶ B14). The undated table is prior art to the '811 Patent. (Id., at ¶ B15). The top portion of the undated table has short sides that curve outward and long sides with an indentation in the middle of the sides. (Id., at ¶B16). The legs of the undated table have an upper scrolled end, a semicircular middle portion, and bottom tapered ends. (Id., at B17). The curvature of the undated table is closer to the design of the '811 Patent table than to the T5450 table. (Id., at ¶ B22).

Plaintiff initially alleged that the points of novelty of the '811 Patent were:

2

| #1 | The smoothly curved long and short side of the table; |
|---|---|
| #2 | the scrolled upper ends of the table legs; |
| #3 | the shape and orientation of the four bars which extend; inwardly from each of the legs toward the center of the table, each bar curving upwardly and then downwardly and then upwardly and meeting at the center of the table; |
| #4 | legs which have a width which tapers inwardly from the top of the leg to the bottom of the semicircular portion and then tapers outwardly to the bottom of the leg; |
| #5 | an elongated ornamental part which extends upwardly from the juncture of the four bars at the center of the table. (Def.'s 56.1(a)(3) Statement ¶ A11). |

Later in discovery, Plaintiff revised the points of novelty of the '811 Patent to be:

| #1 | The smoothly curved long and short sides of the table and the decorative rope twist ornamental design along the side; |
|---|---|
| #2 | the scrolled upper ends of the table legs; |
| #3 | the shape and orientation of the four bars which extend inwardly from each of the legs toward the center of the table, each bar curved upwardly and then downwardly and then upwardly and meeting at the center of the table; |
| #4 | legs which have a width which tapers inwardly from the top of the leg to the bottom of the semicircular portion and then tapers outwardly to the bottom of the leg; |
| #5 | an elongated ornamental part which extends upwardly from the juncture of the four bars at the center of the table. (Id., at ¶ A12). |

Plaintiff's Florentine and Florentine Light tables have a rope twist design on the side of the tables, and certain of its Corona Collection have rope twist ornamental features. (Def.'s 56.1(a)(3) Statement ¶ A13). During the prosecution of the '811 Patent, Plaintiff did not disclose to the Patent Office that Plaintiff's Florentine, Florentine Light, and certain of its Corona Collection have a rope twist ornamental feature. (Id., at ¶ A 14).

The Kreiss' Monterey Coffee table is prior art to the '811 Patent. (Def.'s 56.1(a)(3) Statement ¶ B18). The top portion of the Kreiss' Monterey Coffee Table has short sides that curve

outward and long sides with an indentation in the middle of the sides.  (Id., at ¶ B19).

The '839 Patent was filed on June 7, 1999, issued on May 16, 2000, and lists O'Hare as the only inventor and Plaintiff as the assignee.  (Def.'s 56.1(a)(3) Statement ¶ A19).  The table design of the '839 Patent is part of Plaintiff's Empire line of furniture, which is considered part of Plaintiff's Timeless Elegance Collection of furniture.  (Id., at ¶¶ A 20-21).  The '839 Patent contains 1 claim and 3 drawing sheets.  The single claim is for "[t]he ornamental design for a table, as shown and described".  The drawing sheets are attached as Figures 4-6.

Plaintiff is accusing Defendant's T5993-01X ("the 01X table"), T5993-01, T5594-01, and Benchcraft Model No. 1148590 ("Benchcraft Model") tables of infringing the '839 Patent.  (Def.'s 56.1(a)(3) Statement ¶ B28).  Defendant's T5993-01, T5594, and Benchcraft Model refer to the same table (collectively referred to as the "01 table").  (Id., at ¶ B29).  The feet of the 01 and 01X tables have convex side surfaces.  (Id., at ¶ B45).

The base portion of the '839 Patent table contains a series of surface lines.  (Def.'s 56.1(a)(3) Statement ¶ B31).  The lines on the surface of the table shown in the '839 Patent are intended to illustrate the appearance of the surface of the table.  (Id., at ¶ B32).  O'Hare, the inventor of the '839 Patent, contends that the lines on the surface of the base portion of the table design in the '839 Patent look like wood grain.  (Id., at ¶ B33).  The draftsman who prepared the drawings for the '839 Patent, Mr. Donald Shutters ("Shutters"), also contends that the lines on the surface of the base portion of the table design in the '839 Patent indicates wood grain.  (Id., at ¶ B34).

Section 608.02 of the Manual of Patent Examining Procedure ("MPEP"), under the heading "Drawing Symbols", lists symbols which "should be used to indicate various materials where the material is an important feature of the invention."  (Def.'s 56.1(a)(3) Statement ¶ B35).  The MPEP

4

symbol for wood, when shown on a surface or in a cross sections, is shown in Figure 7. (Id., at ¶ B36). Neither of these symbols listed in the MPEP are used in the drawings of the '839 Patent. (Id., at ¶ B37).

Plaintiff initially alleged that the points of novelty of the '839 Patent were:

#1     The ornamental design on the sides of the upper rectangular base which supports the top of the table;

#2     the reversely curved legs, the scroll on the bottom of each leg, the scroll design at the top of each leg, and the ornamental design on the outside surface of each leg;

#3     the shape of the four-sided rectangular lower base which supports the four legs, the base including four inwardly curved arms;

#4     the ornamental design on the outside surface of each of the arms of the lower base;

#5     the generally circular feet which support the lower base and the convex side surfaces with the generally vertical grooves of the feet. (Def.'s 56.1(a)(3) Statement ¶ A22).

Later in discovery, Plaintiff revised the points of novelty of the '839 Patent as:

#1     The ornamental design on the sides of the upper rectangular base which supports the top of the table;

#2     the reversely curved legs, the scroll on the bottom of each leg, the scroll design at the top of each leg, and the ornamental design on the outside surface of each leg;

#3     the shape of the four-sided rectangular lower base which supports the four legs, the base including four inwardly curved arms;

#4     the ornamental design on the outside surface of each of the arms of the lower base;

#5     the steps on the outside and inside of each of the curved arms of the lower base;

#6     the generally circular feet which support the lower base and the convex side surfaces with the generally vertical grooves on the feet. (Id., at ¶ A23).

Donald Belgrad ("Belgrad") was the individual at Schnadig responsible for patent-related

matters. (Def.'s 56.1(a)(3) Statement ¶ A30). Belgrad was aware of the applications for the '839

Patent as well as United States Patent Nos. 425,725 ("'725 Patent"); 423,255 ("'255 Patent");

425,733 ("'733 Patent") that existed on the Empire line of furniture. (Id., at ¶ A31). An

advertisement dated October 11, 1999, by Plaintiff in *Furniture Today* during the co-pendency of

the applications for the '725, '255, and '733 Patents shows that Plaintiff was aware of the co-

pendency of these patent applications. (Id., at ¶ A32). The applications for the '725, '255, and '733

Patents were not disclosed to the Patent Office during the prosecution of the '839 Patent. (Id., at ¶

A33). The patent examiner that reviewed the '839 Patent also reviewed the '255 and '733 Patent

applications during the same time frame. (Plaint.'s Response to Def.'s 56.1(a)(3) Statement ¶ A33).

The '725 Patent was filed on April 14, 1999, issued on August 1, 2000, and lists Chun Suh

Lee ("Lee") as the only inventor and Plaintiff as the assignee. (Def.'s 56.1(a)(3) Statement ¶ A34).

The serial number for the '725 Patent is 29/103,395. This number falls in between the serial

numbers of the applications listed in the "Related Applications" section of the original specification

for the '839 Patent. (Id., at ¶ A35).

The '725 Patent application was filed and prosecuted by the same law firm and patent

attorneys as the '839 Patent. (Def.'s 56.1(a)(3) Statement ¶ A37). The sofa design of the '725 Patent

is considered by Plaintiff as part of its Empire line of furniture. (Id., at ¶ A 38). The features of the

'725 Patent design and the '839 Patent design were intended to match or coordinate. (Id., at ¶ A39;

O'Hare Dep. Tr. 111). The carving along the front bottom portion, the front legs and the front feet

of the sofa design in the '725 Patent are similar to the carvings, table legs and table feet of the table

design. (Def.'s 56.1(a)(3) Statement ¶ A40; O'Hare Dep. Tr. 110-111). However, because of the

size of the sofa leg of the '725 Patent, the design and the carvings of the sofa leg are different.

(Lee's Dep. Tr. 15-17). Lee used a detailed drawing of the table of the '839 Patent designed by O'Hare when he designed the sofa of the '725 Patent. (Def.'s 56.1(a)(3) Statement ¶ A 42). The '725 Patent application was not disclosed to the Patent Office during the prosecution of the '839 Patent. (Id., at ¶ A43).

The '255 Patent was filed on June 7, 1999, issued on April 25, 2000, and lists O'Hare as the only inventor and Plaintiff as the assignee. (Def.'s 56.1(a)(3) Statement ¶ A48). The '255 Patent was filed and prosecuted by the same law firm and patent attorneys as the '725 and '839 Patents. (Id., at ¶ A49). The table design of the '255 Patent is considered by Plaintiff as part of its Empire line of furniture. (Id., at ¶ A50).

The '255 Patent and the "839 Patent share some identical features and points of novelty." (Def.'s 56.1(a)(3) ¶ A51). The carvings, legs, and feet of the table design in the '255 Patent are identical to the carvings, legs, and feet of the '839 Patent. (Id., at ¶ A52). The application for the '255 Patent and the issuance of the '255 Patent were not disclosed to the Patent Office during the prosecution of the '839 Patent. (Id., at ¶ A53). However, the '255 Patent application was examined simultaneously with the '839 application by the same examiner. Both applications were allowed by the same examiner on the same day. (Plaint.'s Response to Def.'s 56.1(a)(3) Statement A53).

The '733 Patent was filed on June 7, 1999, issued on May 30, 2000, and lists O'Hare as the only inventor and Plaintiff as the assignee. (Def.'s 56.1(a)(3) Statement ¶ A58). The '733 Patent was filed and prosecuted by the same law firm and patent attorneys as the '839 Patent. (Id., at ¶ A59). The table design of the '733 Patent is considered by Plaintiff as part of its Empire line of furniture. (Id., at ¶ A60). Some features and points of novelty of the '733 Patent are identical to those of the '839 Patent. (Id., at ¶ A61). Some of the carvings, the legs, and the feet of the '733

Patent are identical to some of the carvings, the legs, and the feet of the '839 Patent. (Id., at ¶ A62).

During the prosecution of the '733 Patent, the Patent Office rejected the '733 Patent claim based on obviousness-type double patenting of the '255 Patent claim in an Office Action dated December 16, 1999. In response to this rejection, Plaintiff filed a terminal disclaimer on January 5, 2000, during the prosecution of the '733 Patent to overcome this rejection. (Def.'s 56.1(a)(3) Statement ¶ A63). The '733 Patent application was rejected on grounds of obviousness-type double patenting because, while the conflicting claims were not identical, they were "not patently distinct from each other because the difference of the square versus circular table is insufficient as a basis for patentability." (Plaint.'s Ex. C, p. 11496).

The '733 Patent application, the obviousness-type double patenting rejection and terminal disclaimer filed in response to this rejection were never disclosed to the Patent Office by the inventor, Plaintiff or their patent attorney during the prosecution of the '839 Patent. (Def.'s 546.1(a)(3) Statement ¶ A64). However, the '733 Patent application was examined simultaneously with the '839 Patent application by the same examiner. The double patenting rejection of the '733 Patent application was made the same day that the '839 Patent application was allowed. (Plaint.'s Response to Def.'s 56.1(a)(3) Statement ¶ A64).

## ANALYSIS

Summary judgment is proper if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact." Fed. R. Civ. P. 56(c); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). All the evidence and the reasonable inferences that may be drawn from the evidence are viewed in the light most favorable to the nonmovant. *Miller v. American Family Mutual Ins. Co.*, 203 F.3d

997, 1003 (7th Cir. 2000). Summary judgment may be granted when no "reasonable jury could return a verdict for the nonmoving part". *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

## I. Motion for Summary Judgment of Unenforceability

Failure to prosecute a patent application with candor, good faith, and honesty constitutes inequitable conduct. *See Molins PLC v. Textron, Inc.*, 48 F.3d 1172, 1178 (Fed. Cir. 1995) (*Molins*). The court undertakes a two-step analysis in determining whether inequitable conduct occurred. *GFI, Inc. v. Franklin Corp.*, 265 F.3d 1268, 1273 (Fed. Cir. 2001) (*GFI*). First, the court determines whether there has been an affirmative misrepresentation of material fact -- a failure to disclose material information or a submission of false material information, coupled with an intent to deceive. *See Semiconductor Energy Lab. Co. v. Samsung Elect. Co.*, 204 F.3d 1368, 1373 (Fed. Cir. 2000) (*Samsung*). The party asserting the defense must demonstrate by clear and convincing evidence that the information was both material and that the conduct was intended to deceive. *See Samsung*, 204 F.3d at 1373. Second, the court weighs the materiality and intent to deceive in light of all the circumstances to determine whether the patent applicant's conduct is so culpable to render the patent unenforceable. *See GFI*, 265 F.3d at 1273.

## The '811 Patent

Defendant argues that the Plaintiff engaged in inequitable conduct as to the '811 Patent by failing to disclose its own Florentine and Florentine Light tables and its Corona Collection prior art furniture (collectively, the "rope twist furniture") because each has a rope twist design.

Information is "material" if "there is a substantial likelihood that a reasonable examiner would have considered the information important in deciding whether to allow the application to issue as a patent. *Molins*, 48 F.3d at 1179. The standard of materiality is not whether the particular

9

examiner of the application at issue considered the information to be important; instead, "it is that of a 'reasonable examiner'". *Molins*, 48 F.3d at 1179. "Materiality is not limited to prior art but instead embraces *any* information that a reasonable examiner would be substantially likely to consider important in deciding whether to allow an application to issue as a patent." *GFI, Inc. v. Franklin Corp.*, 265 F.3d 1268, 1274 (Fed. Cir. 2001) (*GFI*). It is incumbent on the applicant to disclose potential priority conflicts to the examiner and not to unilaterally make a determination that materials are not prior art. *GFI*, 265 F.3d at 1274.

Plaintiff argues that the rope twist is not material because the previous furniture that contained a rope twist is all of a totally different style than the table of the '811 Patent. Plaintiff's argument is without merit because it is undisputed that the previous rope twist furniture and the '811 Patent table contained a rope twist design on the base of the tables. Plaintiff also identifies the rope twist design as a point of interest of the '811 Patent. Furthermore, the '811 Patent does not show that the table is made of only metal-like material. Therefore, contrary to Plaintiff's assertion, the fact that the rope twist furniture is made of wood does not alter the potential importance of the existing furniture to the patent examiner.

Plaintiff also argues that the rope twist design is not material because Defendant has not identified a "primary reference". Contrary to Plaintiff's argument, the fact that a reference individually lacks one or more elements that are present in the patent at issue is not dispositive on the issue of materiality. *See GFI, Inc. v. Franklin Corp.*, 88 F. Supp. 2d 619, 631 (N.D. Miss. 2000), *aff'd GFI*, 265 F.3d at 1268; *cf. Durling v. Spectrum Furniture Co.*, 101 F.3d 100, 103 (Fed. Cir. 1996) (primary reference needed in obviousness determination).

Based on the above, the rope twist furniture is material because there is a substantial

likelihood that a reasonable examiner would have considered the information important in deciding whether to allow the application to issue as a patent. *See Molins*, 48 F.3d at 1179.

Intent is generally inferred from the circumstances and facts surrounding the patent applicant's conduct. *Samsung*, 204 F.3d at 1375. Direct evidence is usually not available to demonstrate intent; instead, it is generally demonstrated "by a showing of acts, the natural consequences of which are presumably intended by the actor." *Molins*, 48 F.3d at 1180.

Here, it is undisputed that some furniture, including tables, that were part of Plaintiff's furniture line contained a rope twist design. Belgrad testified at his deposition that he knew that Plaintiff had used a rope twist design in furniture, including tables, prior to the submission of the '811 Patent. However, he did not cite to any previous furniture because the rope twist was on the apron and he believed the '811 Patent table was "unique". (Belgrad's Dep. p. 38-40). Belgrad also avers that he did not think of the Florentine and Florentine Light tables when the '811 Patent was pending. (Belgrad's Dec. p. 14).

Based on the above, issues of material fact exist as to whether the Plaintiff intended to deceive the Patent Office. Accordingly, summary judgment as to the unenforceability of the '811 Patent must be denied.

<u>The '839 Patent</u>

As to unenforceability of the '839 Patent, Defendant argues that the Plaintiff engaged in inequitable conduct by failing to disclose other similar co-pending patent applications.

It is undisputed that at the time of the '839 Patent, Plaintiff had other patent applications pending, including the '725, '255, and '733 Patents, and that Plaintiff was aware that these other patents were pending.

11

The '725 Patent was for a sofa that was part of the same line of furniture as the '839 Patent, and it was designed to match or coordinate with the '839 Patent table. The carvings along the front bottom portion, the front legs and the front feet of the sofa are similar to the table legs and table feet of the table design. While the '725 Patent was filed prior to the '839 Patent, the '725 Patent was designed after the '839 Patent as the '839 Patent was used to design the '725 Patent.

The '725 Patent does not constitute prior art because it is undisputed that it was invented after the '839 Patent. *See* 35 U.S.C. § 102(e); *In re Costello*, 717 F.2d 1346, 1348-49 (Fed Cir. 1983). Contrary to Defendant's argument, the disclosure of the '725 Patent would not have been material to the prosecution of the '839 Patent because it could not have been used to reject the '839 Patent on the grounds of unpatenability or improper inventorship as it is not prior art. Accordingly, Plaintiff need not have disclosed the '725 Patent.

The '255 and '733 Patents are for tables that are part of the same line of furniture as the '839 Patent. The '255 and '733 Patents share some identical features and points of novelty as the '839 Patent. Some of the carvings, legs, and feet of the table design in the '255 and '733 Patents are identical to the carvings, legs, and feet of the '839 Patent. The application and the issuance of the '255 Patent were not disclosed to the Patent Office. The '733 Patent was rejected by the Patent Office based on obviousness-type double patenting of the '255 Patent claim. The latter filed terminal disclaimer filed by the Plaintiff to overcome the objection was also subsequently rejected by the Patent Office. The '733 Patent application, the obviousness-type double patenting rejection and terminal disclaimer filed in response to the rejection were never disclosed to the Patent Office.

In opposition to Defendant's motion, Plaintiff argues that it did not need to inform the examiner of these patents because the same examiner examined the '255 and '733 Patents

12

simultaneously with the '839 Patent. Therefore, there was no obligation to inform the examiner about the '255 and '733 Patents because she already knew about them.

In support of its argument that the examiner must have already known about the '255 and '733 Patent, Plaintiff relies upon the fact that all three patents were filed on the same day, all three were reviewed by the same examiner, the first Office Action for each patent contained the same date, the examiner conducted her searches on the same date, and the examiner allowed the '255 and '839 Patents and rejected the '733 Patent on the same day. These facts fairly support an inference that the examiner was aware of the three patents. However, the prosecution history documentation also demonstrates that the examiner conducted work on different days for the different patents. For example, the examiner dated the section titled "examiner", "06/25/99" for the '839 Patent. The examiner did not date the same section for the '255 Patent and dated the '733 Patent, "6/22/99". Thus, the examiner did not necessarily work on the three patents at the same time, and it cannot be concluded that she was aware of each patent and appreciated their relationship to each other. *See Armour & Co. v. Swift & Co.*, 466 F.2d 767, 779 (Fed. Cir. 1972) ("Examiner, no matter how diligent and well informed he may be, [it cannot be] assume[d] that he retains details in every pending file in his mind when he is reviewing a particular application.").

The '839 Patent and the '255 and '733 Patents contained identical features and points of novelty. Thus, it would appear that the patents were material to the prosecution of the '839 Patent. However, the above facts pertaining to the information before the examiner demonstrate that an issue of genuine fact exists whether the '255 and '733 Patents were material. Based on Plaintiff's argument and supporting facts, an inference can be made that the '255 and '733 are not material because they were reviewed by the same examiner at the same time as the '839 Patent and they did

13

not affect the approval of the '839 Patent. *See Pacific Furniture Manuf. Co. v. Preview Furniture Corp.*, 626 F. Supp. 667, 674-75 (M.D. N.C. 1985) *aff'd* 800 F.2d 1111, 1114 (Fed. Cir. 1986) (fact that same examiner reviewed both patents and both patents were issued on the same day places doubt of the importance which could have reasonably been attributed to any further disclosure). Accordingly, genuine issues of material fact exist whether the non-disclosure of the '255 and '733 Patents were material. Thus, summary judgment of the unenforceability of the '839 Patent must be denied.

## II. Motion for Summary Judgment of Noninfringment

A patent infringement analysis consists of two steps. In the first step, the meaning and scope of the patent claims asserted to be infringed are determined. This is commonly referred to as claim construction. The second step entails proving the infringement by comparing the properly construed claims to the device accused of infringing. *Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 976 (Fed. Cir. 1995) (*Markman*).

### A. Claim Construction

The court considers three sources to ascertain the meaning of claims: the claims, the specification, and the prosecution history. *Markman*, 52 F.3d at 979. Extrinsic evidence, such as expert and inventor testimony, may be relied upon to interpret the claims, if necessary, so long as it does not contradict the intrinsic evidence. *Markman*, 52 F.3d at 980; *Eastman Kodak Co. v. Goodyear Tire & Rubber Co.*, 114 F.3d 1547, 1555 (Fed. Cr. 1997).

When construing a design patent claim, the scope of the claimed design encompasses "its visual appearance as a whole" and in particular "the visual impression it creates". *Contessa Food Products, Inc. v. Congra, Inc.*, 282 F.3d 1370, 1376 (Fed. Cir. 2002) (*Congra*). Design patents are

14

"limited to what is shown in the application drawings". *In re Mann*, 861 F.2d 1581, 1582 (Fed. Cir. 1988).

Graphical drawing symbols in design may be used for conventional elements. The elements for which such symbols must be adequately identified in the specification. 37 C.F.R. §1.84(n). Known devices should be illustrated by symbols which have universally recognized conventional meaning and are generally accepted in the art. Other symbols may be used, subject to the approval of the Patent Office, if such symbols are not likely to be confused with existing conventional symbols and if they are readily identifiable. 37 C.F.R. §1.84(n). The Manual of Patent Examining Procedure ("MPEP") identifies two possible symbols for wood. *See* Figure 7 attached hereto.

<u>The '811 Patent</u>

The parties do not dispute the construction of the '811 Patent. The '811 Patent is construed from the three figures included in the patent.

The '811 Patent is a rectangular table with a glass top supported by an apron consisting of four curved sides which meet at squared corners. The long sides of the apron curve inwardly at the midpoint, making the table more narrow at this point. The short sides curve outwardly at about midpoint. A rope twist design is positioned in the middle of the apron. The rope twist design follows the serpentine contours of the apron and extends around the squared corners. The apron is supported by four legs which have scrolled upper ends, C-shaped middle portions, and hoof-like bottom ends. Four stretchers extend inwardly from the middle of the C-shaped portions of the legs and meet below the center of the table. Each stretcher curves upwardly and then downwardly where the stretchers meet. An elongated finial ornament with vertical grooves extends upwardly from the juncture of the four stretchers at the center of the table.

## The '839 Patent

The '839 Patent includes four drawings, which show various perspectives of a rectangular table. All of the drawings show a solid top containing surface lines, which the parties agree depicts a marble top. The top is supported by a solid apron, which also contains surface line drawings. The top of the apron is carved and is supported by four legs, which also contain surface line drawings. The legs of the base have a scroll design on the top and bottom of each leg and a carved leaf design on the outer surface of each leg. The four legs sit upon stretchers, which contain surface line drawings. The stretchers also contain the same carving as the apron in the middle of the stretcher. Four reeded bun feet support the stretchers.

The main dispute between the parties as to the proper construction of the '839 Patent is whether the drawings depict a base made of wood or marble. Plaintiff argues that the surface line drawings depict wood. In support of its argument, Plaintiff provides testimony from the inventor that the surface line drawings on the top of the table were drawn to represent marble, and the rest of the table was drawn to represent wood. In addition, the inventor has used similar surface line drawings in other patents that have not been objected to by the Patent Office.

Defendant argues that the surface line drawings of the base represent marble or a marble-like finish. Defendant first points out that the inventor did not use either of the symbols for wood found in the MPEP. Plaintiff conceded at the *Markman* hearing that the inventor did not use either of the symbols for wood found in the MPEP. Plaintiff also failed to identify the line surface drawings as a symbol for wood within the patent. Nothing in the patent or the prosecution history indicate that the line surface drawings represent wood. Lastly, the Defendant presents expert testimony that the line surface drawings do not show wood and that the line surface drawings of the '839 Patent are not

16

universally recognized and generally accepted in the art as showing wood.

As to the material of the base of the '839 Patent, the drawings of the base contain surface line drawings that are almost identical to the line surface drawings of the top of the table, which both parties do not dispute shows marble. Plaintiff failed to use either of the symbols identified in the MPEP and has failed to present credible evidence that the line surface drawings that were used are universally recognized and generally accepted in the art as showing wood. The only testimony provided is from the inventor, who has an obvious interest in the outcome of the existing suit. Defendant has produced independent expert testimony that the line surface drawings are not universally recognized and generally accepted in the art as showing wood.

Based on the drawings within the patent and the above evidence, the correct construction of the '839 Patent includes a marble or marble-like finish base. The parties also dispute the number of steps on the inside of the stretchers. Plaintiff argues that the '839 Patent contains two steps; Defendant argues that it contains five steps. The drawings included in the '839 Patent indicate that the inside of the stretchers contain five steps, and the claim must be so construed.

*B. Comparison of the Construed Claim to the Accused Device*

The second inquiry when determining whether a design patent is infringed is a comparison of the construed claim to the accused device. *See Congra*, 282 F.3d at 1376. This comparison includes two distinct tests: (1) the "ordinary observer test" and (2) the "point of novelty" test. Each of these tests must be met in order to find infringement. *See Congra*, 282 F.3d at 1377.

The "ordinary observer" test was set forth in *Gorham Co. v. White*:

> if, in the eye of an ordinary observer, giving such attention as a purchaser usually gives, two designs are substantially the same, if the resemblance is such as to deceive such an observer, inducing him to

purchase one supposing it to be the other, the first one patented is infringed by the other. 81 U.S. (14 Wall.) 511, 528 (1871).

Under this analysis, it is the appearance of the design as a whole which is controlling, and all of the ornamental features must be considered in evaluating whether the design patent is infringed. *See Congra*, 282 F.3d at 1378. However, the accused and the patented designs do not have to be identical in order to find patent infringement. *See Oddzon Prod., Inc. v. Just Toys, Inc.*, 122 F.3d 1396, 1405 (Fed. Cir. 1997). Similarities, as well as differences in the design, are relevant in determining whether an ordinary observer would be deceived. *See Goodyear Tire & Rubber Co. v. Hercules Tire & Rubber Co.*, 162 F.3d 1113, 1117 (Fed. Cir. 1998).

The "point of novelty" test requires proof that the accused design appropriates the novelty which distinguishes the patented design from the prior art. *See Congra*, 282 F.3d at 1377.

As with other patents, the doctrine of equivalents is also applicable to design patents, and infringement can be found on such a theory absent literal infringement. *See Lee v. Dayton-Hudson Corp.*, 838 F.2d 1186, 1189-90 (Fed. Cir. 1988) (*Lee*). Under the doctrine of equivalents, as applied to design patents, infringement can be found for designs that are not identical. However, "such designs must be equivalent in their ornamental, not functional, aspects." *Lee*, 838 F.2d at 1190. Accordingly, "[t]he accused device must meet the *Gorham* [ordinary observer] test of similarity or ornamental appearance such that an ordinary observer would be likely to purchase one thinking it was the other." *Lee*, 838 F.2d at 1190.

### The '811 Patent

Plaintiff accuses Defendant's T5450 table as infringing its '811 Patent table. Both parties provide "expert" testimony supporting their respective positions as to whether the ordinary observer

test is satisfied. However, under the ordinary observer test, whether the two designs are substantially the same is to be determined "from the viewpoint of the eyes of men generally"; the required comparison "counsels against measuring the similarity of designs from the viewpoint of experts...." *See Congra*, 282 F.3d at 1381-82.

Defendant's T5450 table has several features that are similar to the '811 Patent table. Like the '811 Patent table, the T5450 table has a glass top supported by a base consisting of four curved sides which meet at squared corners. The short sides of the apron curve outwardly at about midpoint. A rope twist design is positioned in the middle of the apron. The rope twist design follows the serpentine contours of the apron and extends around the squared corners. The top of the base is supported by four legs which have scrolled upper ends, C-shaped middle portions, and hoof-like bottom ends. Four stretchers extend inwardly from the middle of the C-shaped portions of the legs and meet at below the center of the table. Each stretcher curves upwardly and then downwardly where the stretchers meet. A finial ornament extends upwardly from the juncture of the four stretchers at the center of the table.

Differences in the T5450 table include that the long sides of the apron curve outwardly at the midpoint, making the table more wide – the long sides of the apron of the '811 Patent table curve inwardly at the midpoint, making the table more narrow at this point. While the accused table's stretchers curve upwardly and then downwardly where the stretchers meet, the curvature is less pronounced than the '811 Patent table. Lastly, the finial ornament which extends upward from the juncture of the four stretchers at the center of the table is of a different design and is smaller than the finial ornament of the '811 Patent table. Being of a different design and smaller, the distance between the finial ornament and the underside of the glass top is appreciably greater in the T5450

19

table than the '811 Patent table.

The above-cited differences in the T5450 table are clearly observable to the ordinary purchaser and make the appearance of the T5450 table design as a whole distinguishable from the '811 Patent table. As such, an ordinary observer would not be deceived to purchase the T5450 table supposing it to be the '811 Patent table.

Assuming argumendo, that Plaintiff had satisfied the ordinary observer test, Defendant's T5450 table does not satisfy the point of novelty test. Specifically, Plaintiff's fifth point of novelty is "an elongated ornamental part which extends upwardly from the juncture of the four bars at the center of the table." Defendant's T5450, while containing an ornament that extends upward from the juncture of the stretchers, is not elongated and is of a different shape than the '811 Patent table. If Plaintiff desired to have the patent include any ornament, it could have shown the ornament in broken lines to exclude the specific ornament from the claimed design as set forth in the MPEP 1503.02.

In addition, the fourth point of novelty is not met. The '811 Patent does not depict table legs having a width which tapers inwardly from the top of the leg to the bottom of the semicircular portion and then tapers outwardly to the bottom of the leg. Instead, the width of the scrolled upper end and the semicircular portion appears the same.

As to the alleged remaining points of novelty, the rope twist design, the scrolled upper ends of the legs, and the shape and orientation of the four bars of the stretcher extending inwardly from each of the legs toward the center of the table are found in prior art and are, therefore, not points of

novelty.[2]

Lastly, as stated above, the accused table does not meet the ordinary observer test. Accordingly, Defendant's T5450 table does not infringe the '811 Patent under the doctrine of equivalents. *See Lee*, 838 F.2d at 1190.

### The '839 Patent

Plaintiff accuses Defendant's 01 and 01X tables as infringing its '839 Patent.

Like the '839 Patent table, the 01 and 01X tables have a solid top of marble. The top of the apron is carved and is supported by four legs. The legs of the base have a scroll design on the top and bottom of each leg. The four legs sit upon stretchers, which contain the same carving as the apron in the middle of the stretcher. Four reeded bun feet support the stretchers. In addition, the 01X table contains a carved leaf design on the outer surface of each leg.

Differences in the 01 and 01X tables include that the finish on the apron and stretchers is painted. The inside of the stretchers contain two steps while the '839 table contains five steps. The legs of the 01 table also differ from the '839 Patent table because they do not contain a leaf design on the outer surface of each leg; they contain a carved leaf design at the bottom of each leg, and they contain a flower design on the sides of each leg.

As to the 01X table, the primary difference between it and the '839 Patent table is the base finish and the number of steps on the inside of the stretchers. While the finish is different, the

---

[2]Plaintiff again argues that a the prior art is not material to the novelty test because Defendant has not identified a "primary reference". However, Defendant submitted the prior art to demonstrate that the alleged points of novelty are not actually points of novelty for disposition of whether infringement took place. Primary references are required for the defense of obviousness, not the determination of infringement. *See Durling v. Spectrum Furniture Co.*, 101 F.3d 100, 103 (Fed. Cir. 1996) (primary reference needed in obviousness determination).

photographs of the 01X table indicate that the base appears to have a marble-like finish. In addition, the distinction in the number of steps of the base is not readily observable. Lastly, the legs of the 01X table are not reversely curved; instead, they are perpendicular. However, the reverse curve of the legs of the '839 Patent is very slight.

As explained above, the differences between the accused device and the '839 Patent table are slight based on the materials provided in conjunction with the motion for summary judgment. Because the differences between the two tables is slight, the Court is unable to determine whether an ordinary observer would be deceived in such a manner to induce him to purchase the 01X table believing that it is the '839 Patent table.

As to the points of novelty test for the 01X table, the 01X table does not contain the second point of novelty of the '839 Patent. The second point of novelty requires a reversely curved leg; it is undisputed that the 01X table does not contain a reversely curved leg. Accordingly, the second part of the literal infringement test is not satisfied, and Defendant's 01X table does not literally infringe the '839 Patent.

However, the Court having found that a material issue of fact exists regarding the ordinary observer test, the Plaintiff, therefore, may be able to establish infringement under the doctrine of equivalents. *See Lee*, 838 F.2d at 1190. Accordingly, summary judgment of noninfringement is not appropriate as to the 01X table and the '839 Patent.

As to Defendant's 01 table, several differences exist between its ornamental design and the '839 Patent. The 01 table has a painted base, and the base does not appear to have a marble or marble-like finish. The 01 table has only two steps on the inside of the stretchers. Importantly, the carvings of the legs of the 01 table are distinctively different than the '839 Patent. The 01 table does

not have a carved leaf design on the top of each leg. Instead, it contains a flower-like design. Furthermore, the bottom of each leg contains a carved leaf design. The '839 Patent table does not contain a leaf carving at the bottom of the leg. The leaf carving at the bottom of the 01 table is also of a different design than the leaf carving found at the top of the '839 Patent table. In addition, the 01 table contains a circular flower-like carved design on the sides of each leg; the '839 Patent table does not contain similar carvings.

The above cited differences are clearly observable to the ordinary purchaser and make the appearance of the 01 table design as a whole distinguishable from the '839 Patent table. As such, an ordinary observer would not be deceived to purchase the 01 table supposing it to be the '839 Patent table.

Furthermore, based on the above finding that Plaintiff has not satisfied the ordinary observer test, Plaintiff also cannot prevail under the doctrine of equivalents. *See Lee*, 838 F.2d at 1190. Accordingly, summary judgment of noninfringement of the '839 Patent by the 01 table is proper.

## CONCLUSION

For the foregoing reasons, Defendant's Motion for Summary Judgment of Unenforceability is denied. Defendant's Motion for Summary Judgment of Noninfringement is granted in part and denied in part. Defendant's Motion for Summary Judgment of Noninfringement of the '811 Patent is granted. Defendant's Motion for Summary Judgment of Noninfringement of the '839 Patent is granted as to the 01 table and denied as to the 01X table.

Dated: October 2, 2002

JOHN W. DARRAH
United States District Judge

23

FIGURE 1



FIGURE 2



FIGURE 3



FIGURE 4



FIGURE 5



FIGURE 6



FIGURE 7

MANUAL OF PATENT EXAMINING PROCEDURE

**608.02**

The following symbols should be used to indicate various materials where the material is an important feature of the invention. The use of conventional features is very helpful in making prior art searches.

